IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:21-CR-075 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| YURI PERREN GREEN JR., | ) | MEMORANDUM |
| also known as, "YG", | ) | |
| | ) | |
| Defendant. | ) | |

# Table of Contents

INTRODUCTION ................................................................................ 1

ADVISORY GUIDELINES RANGE ................................................... 2

    *1. Factual Issues* .......................................................................... 2

    *2. Guideline Issues* ...................................................................... 4

        a. USSG §2A2.1(a)(1) was appropriately applied.................................4

        *b.* The two-level enhancement for obstruction of justice applies..............8

THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 534 MONTHS' PRISON... 9

CONCLUSION..................................................................................... 13

## INTRODUCTION

Defendant, an armed gang member, committed a series of shootings. These shootings involved aggravating circumstances that greatly endangered the public. Defendant also engaged in repeated illegal gun possession and witness intimidation, including during trial. The Court should impose a sentence of 534 months' imprisonment.

## ADVISORY GUIDELINES RANGE

The government agrees with the advisory guidelines range contained in the PSR, which is calculated as follows:

| | |
|---|---|
| Base offense level, Group 1 (§2A2.1(a)(1) (Counts 8 & 10)) | 33 |
| Base offense level, Group 2 (§2A2.1(a)(1) (Counts 12, 14, 15)) | 33 |
| Obstruction of justice, Group 2 (§3C1.1) | +2 |
| Adjusted offense level | 35 |
| Multiple count adjustment (§3D1.4)) | +2 |
| Total offense level | 37 |
| | |
| Criminal History | III |

Guidelines range:  262 to 327 months' imprisonment + 240 months', consecutive = 502 to 567 months' imprisonment

Defendant has multiple unresolved factual and guideline issues, which will be further addressed below.

1. *Factual Issues*

Defendant raised several factual issues to the information contained in the offense conduct section of the PSR. *See generally* Dkt No. 447 at ¶ 1. Defendant generally argues that three paragraphs of the PSR were not supported by evidence presented at trial. Each objection is addressed below.

As a preliminary matter, Defendant's objections seem to confuse two topics—what was proven at trial and what can be included in the offense conduct section of a PSR. At sentencing, the Court may consider any relevant information, provided it has a sufficient indicia of reliability. *United States v. Pepper*, 747 F.3d 520, 524 (8th Cir. 2014) (internal quotations omitted). In fact, the Court can consider even acquitted conduct, provided it is supported by a preponderance of the evidence.

*United States v. Watts*, 519 U.S. 148 (1997); *accord United States v. Bullock*, 35 F.4th 666 (8th Cir. 2022).  Thus, Defendant's objections that facts included in the offense conduct section shouldn't be included because they weren't proven or presented at trial is legally incorrect.

Regarding Defendant's objection to paragraph 25, contrary to Defendant's claims, there was evidence presented at trial regarding Defendant continued involvement in shootings, gun possession, drug dealing, and other criminal activity. This was both in the form of witness testimony, as well as exhibits (including Defendant's numerous social media posts).  The information in paragraph 25 is factually correct, and Defendant's objection should be overruled.

Defendant also objects to paragraph 26 and states that information contained therein regarding a series of robberies Defendant committed were not supported by evidence at trial.  What Defendant's objection ignores is that, other than the robbery where Defendant stole the gun he used in the December 16, 2020, shooting, the Court (at Defendant's request) specifically prevented the government from offering evidence of the Arizona robberies.  Dkt. No. 316 at 26.  Thus, the government could not have introduced evidence of the robberies at trial without violating the Court's order.

The Court, as part of the trial proceedings, was provided evidence of these robberies through the transcripts of the grand jury testimony of Ashley Inthabounh, Jeremiah McGregor, Detective Jeffrey George, and Kayla Khambanoun. The Court can rely on grand jury testimony in sentencing proceedings.  *United States v. Cross*, 888 F.3d 985, 993 (8th Cir. 2018) (internal quotation marks omitted); *accord United*

*States v. Webb*, 2022 WL 2441322 (8th Cir. July 5, 2022) (unpublished).  Thus, the Court can consider these transcripts as evidence of the other robberies Defendant committed in Arizona.

Finally, Defendant objects to paragraph 31 regarding Montejha Hall's trial testimony.  The government disputes that Hall called the United States Attorney's Office or spoke with anyone from the United States Attorney's Office following service of her trial subpoena.  There is no record of this call, and the victim/witness coordinator assigned to this case confirmed she did not speak with Hall about her trial subpoena.  Hall's testimony regarding this issue was incorrect.

*2. Guideline Issues*

Defendant also objected to two guideline applications—whether the first degree murder guideline was appropriately applied, and whether a two-level enhancement for obstruction of justice was appropriately applied.  For the reasons that follow, the Court should overrule Defendant's objections on each issue.

**a.  USSG §2A2.1(a)(1) was appropriately applied**

The guideline for a violation of 18 U.S.C. § 1959 can be found in USSG §2E1.3.  That section directs that the base offense level is either a 12 or "the offense level applicable to the underlying crime or racketeering activity."  USSG §2E1.3(a).  Application Note 1 further instructs that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used."  USSG §2E1.3, comment. (n.1).

As charged in the Indictment, and found by the jury, the underlying crime in Counts 8 and 12 was Attempted Murder.  Thus, USSG §2A2.1 applies.  That section notes that a base offense level of 33 applies "if the object of the offense would have constituted first degree murder; or (2) 27 otherwise."  USSG §2A2.1(a).  Application Note 1 defines "first degree murder" as that found in 18 U.S.C. § 1111.  For the reasons that follow, because the object of the offense in both Count 8 and Count 12 here was first-degree attempted murder, a base offense level of 33 applies.

Pursuant to 18 U.S.C. § 1111(a), "[m]urder is the unlawful killing of a human being with malice aforethought."  18 U.S.C. § 1111(a).  "A defendant acts with malice aforethought if he acts with specific intent to kill—the intention of 'tak[ing] the life of a human being'—or acts 'in callous and wanton disregard of the consequences to human life.'"  *United States v. Conley*, (8th Cir. July 28, 2022) (per curiam) (citing and quoting to *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021)).  An attempted murder case requires, for malice aforethought, a specific intent to kill versus only a callous and wanton disregard of the consequences to human life.  *Braxton v. United States*, 500 U.S. 344 (1991).

Here, the jury convicted Defendant, in both Counts 8 and 12, of Attempted Murder in Aid of Racketeering.  The underlying offense of attempted murder required a specific intent to kill.  Dkt. No. 372 at 29-31.  Thus, the attempted murder guideline applies, and the only argument seems to be whether the conduct rose to first or second-degree murder.  The evidence demonstrates that first degree attempted murder is the proper application.

As outlined in 18 U.S.C. § 1111(a), in order to be first degree murder, the conduct has to fit into one of the specifically identified categories. Those include "lying in wait, or any other kind of willful, deliberate, malicious, and premeated killing . . . ." 18 U.S.C. § 1111(a). The conduct here, as to each count, supports the "any other kind of willful, deliberate, malicious, and premeditated killing" category.

Premeditation, as defined in the Eighth Circuit's Model Instruction Number 6.18.1111A-2, is a killing that is "intentional and the result of planning or deliberation." The Model Instruction further notes that "[t]he amount of time needed for premeditation of a killing depends on the person and the circumstances." However, "[i]t must be long enough for the defendant, after forming the intent to kill, to be fully conscious of his intent, and to have thought about the killing." Eighth Circuit Model Instruction No. 6.18.111A-2.

Here, there was clear premeditation to commit the underlying attempted murder offenses. First, as to the May 10, 2020, shooting, the evidence at trial established that after Shafer was shot in the head earlier that day, Defendant and Fabrece Bower-Turner set out to find a rival gang member to shoot in retaliation. They had Jordan Wilkerson drive them around until they found who they thought was a rival gang member. When they saw that person, Defendant and Bower-Turner fired their guns. The purposeful seeking out of his target shows Defendant's actions were intentional and planned. Additionally, the testimony at trial shows that these actions were put in motion well before the shots were fired. There was clear

premeditation regarding the May 10, 2020, shooting involving Defendant, and a base offense level 33 applies.

Second, there was also clear premeditation regarding the December 16, 2020, shooting.  As Government Trial Exhibits 690, 690B and Detective George's testimony demonstrated, approximately nine minutes before the shooting, Defendant was driving in the vicinity of the shooting armed with a Glock pistol.  (Trial Transcript at 1295-1300; Government Trial Exhibits 690, 690B.)  He was also rapping about having a Glock .40 caliber on him and trying to find an opposition gang member.  (Trial Transcript at 1392-93; Government Trial Exhibits 690, 690B.)  The testimony at trial, explaining Defendant's Snapchat location data immediately prior to the shooting, showed that he drove by the shooting location, immediately circled back around, and then fired shots.  (Trial Transcript at 1302-1304, 1396.)  This demonstrates that Defendant likely saw his targets, circled the block, and then shot them when he came back around.  This is further supported by his Snapchat posts from just about an hour after the time of the shooting (Trial Transcript at 1395; Government Trial Exhibit 691), where he is rapping to a song stating exactly that ("Spin the block, pop out with them Glocks, and leave 'em dead.").  This demonstrates that he saw his targets, then planned the shooting while he circled the block to reapproach them.  This, again, is premeditated first-degree murder.

Even setting all that aside, there was premeditation based on Defendant's actions during the shooting alone.  Defendant's actions demonstrate that this wasn't some spur of the moment decision brought on by circumstances outside of Defendant's

control.  Instead, this was a calculated decision, even in the moment, of Defendant's planning and deliberation of exactly what he intended to do—shoot at and kill rival gang members.  Defendant's following of the car containing the rival gang members, rolling down his window, sticking his hand holding his loaded Glock outside the car window, then firing at least five shots at the vehicle containing rival gang members demonstrates premeditation.

A base offense level 33 also applies for this Count.

**b. The two-level enhancement for obstruction of justice applies**

Defendant also objects to the two-level enhancement for obstruction of justice, pursuant to USSG §3C1.1.  Specifically, Defendant seems to argue that Defendant's conviction on Count 15 should be a separate group, rather than part of Group Two.  Dkt. No. 447 at ¶¶ 5-6.  Defendant states that the obstruction conviction does not relate to either of the racketeering offenses, and only "related to the events which led to [Defendant's] arrest on December 20, 2020."  Dkt. No. 447 at ¶ 6.  Defendant is incorrect, and the Court should overrule his objection.

Contrary to Defendant's objection, his obstruction *did* relate to the underlying predicate racketeering activity.  The gun found in the Nissan Rogue during the Warren County incident was the same gun Defendant used in the December 16, 2020, shooting.  So regardless of whether Hall's grand jury testimony was limited to the Warren County incident (which is was not as further outlined below), her testimony regarding the Warren County incident related to the investigation of the VICAR offense.  "[W]hen a defendant obstructs the investigation of a predicate racketeering

act, that defendant obstructs the investigation of the overall racketeering offense." *United States v. Gershman*, 31 F.4th 80, 105 (2d Cir. 2022) (in RICO context).

Further, Defendant's statements in the jail calls offered in support of Count 15 wasn't limited to instructing Hall to contradict witness Brooklyne Wilson's account. Instead, Defendant also told Hall to avoid testifying altogether.  At trial, Hall was asked on cross examination about her grand jury testimony, and she acknowledged telling the grand jury that Defendant was a gang member.  Additionally, as part of the trial proceedings, the Court was provided with a copy of Hall's grand jury testimony transcript, which further details the subject matter of her testimony (which was not limited to the Warren County incident).

Based on the above, the Court should overrule Defendant's objection, and apply the obstruction enhancement.

## THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 534 MONTHS' PRISON

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1.  the nature and circumstances of the offense and history and characteristics of the defendant;
2.  the need for the sentence imposed –
    A.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B.  to afford adequate deterrence to criminal conduct;
    C.  to protect the public from further crimes of the defendant; and
    D.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3.  the kinds of sentences available;
4.  the guideline sentencing range;
5.  any pertinent policy statement;

6.    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.    the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). For the reasons that follow, the § 3553(a) factors support a sentence of 534 months' imprisonment, which is the middle of the guideline range.

The Court is extremely familiar with the facts of this case. Defendant's conduct is aggravating on multiple levels. The crimes he committed are, in and of themselves, violent and dangerous. But Defendant committed those crimes in an aggravated form not taken into account by the guidelines. Further, he engaged in other behavior not taken into account by the guidelines.

First, the circumstances of the two shootings of which Defendant was convicted in this case are aggravated. The first one was committed in a residential neighborhood, where Defendant fired at the victim from a vehicle across a busy city street. His intended target was not who Defendant thought he was, and was actually an innocent person on their way home from work. The victim dramatically recalled the events of that night during trial, which were harrowing. The second shooting was committed in a highly populated mixed business and residential district, in close proximity to several buildings, including a governmental building frequented by members of the public. One witness to that shooting worked at the governmental building, and witnessed the shooting while outside on a break from her shift. This shooting was committed around 3:26 p.m., further adding to the dangerousness of Defendant's actions. The aggravating circumstances of both of these shootings are

not taken into account by the guidelines, and further demonstrate Defendant's brazen disregard for the safety of others.

Second, Defendant's prolific witness tampering in this case was not taken into account by the guidelines, other than the two-level enhancement he received for the conduct underlying Count 15.   However, Defendant's witness tampering and intimidation in this case far exceeded that conduct.  Specifically, no fewer than three witnesses testified at trial about Defendant's direct threats to them regarding their cooperation or perceived cooperation with the government.   Additionally, multiple other witnesses testified about their reluctance to testify against Defendant because they were scared of him.   Defendant also attempted, mid-trial, to influence the testimony of Hall.   Defendant's attempts, both before and during trial, to affect the administration of justice in this case is something that should be taken seriously by this Court.

Third, the circumstances of the Warren County incident are not taken into account by the guidelines, as that count is grouped with the attempted murder count. What Defendant did in Warren County was, to put it mildly, disturbing.  The 9-1-1 call played at trial (Government Trial Exhibit 416) presented not only a real-time account of Defendant's actions that day, but also the effect his actions had on those around him.  In short, Defendant, after sending a series of threatening messages to a witness, drove to a residential neighborhood on the south side of Des Moines on a Sunday morning with the intent to threaten that witness.  Defendant went to the wrong house, where he proceeded to wave around a gun.  After the police came,

Defendant ran from them into a wooded area. Police required the use of a canine officer to apprehend him. Defendant had two guns in his possession that day, including the Glock .40 caliber pistol he used in the shooting four days prior, as well as a Kel-Tec folding rifle. He also had extra ammunition in his vehicle. These facts are not taken into account by the guideline calculation.

Defendant's conduct in this case shows a reckless disregard for the safety of the community. His behavior put others at risk, including innocent people. This is consistent with his behavior in the past, including his prior conviction for intimidation with a dangerous weapon. In that incident, Defendant went to the victim's residence to kill him, pointed a firearm at a second victim, and then shot multiple rounds at the house and in the direction of multiple people. PSR ¶ 62. He received probation for this conviction, and was still serving that term of probation when he committed the federal crimes we are here for today.

Defendant's behavior, both past and present, demonstrates he is dangerous. He has not been deterred by judicial leniency in prior proceedings. And supervision has also not changed his behavior. Defendant is a recidivism risk and a danger to the community. A sentence of 534 months' prison achieves the goals of sentencing.

## CONCLUSION

The Court should impose a sentence of 534 months' imprisonment.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By:  */s/ Kristin M. Herrera*
Kristin M. Herrera
Ryan W. Leemkuil
Assistant United States Attorneys
Alexa K. Perez
Special Assistant United States Attorney
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: kristin.herrera@usdoj.gov
Email: ryan.leemkuil@usdoj.gov
Email: alexa.perez@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on August 12, 2022, I electronically
filed the foregoing with the Clerk of Court using the
CM ECF system.  I hereby certify that a copy of this
document was served on the parties or attorneys of
record and the United States Probation Officer by:

____ U.S. Mail ____ Fax ____ Hand Delivery

 X  ECF/Electronic filing ___ Other means (email)

UNITED STATES ATTORNEY
By:    */s/Kristin M. Herrera, AUSA*