IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RAEKWON MALIK PATTON, AUSTIN JAMES MALLORY, and YURI PERREN GREEN JR.,<br><br>    Defendants. | **No. 4:21-cr-00075-RGE-HCA**<br><br>**ORDER DENYING DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL** |

## I.  INTRODUCTION

Defendants Raekwon Malik Patton, Yuri Perren Green Jr., and Austin James Mallory were charged along with other defendants with Violent Crimes in Aid of Racketeering related offenses. These charges stemmed from a series of shootings in Des Moines, Iowa, in 2020. Defendants Patton, Green, and Mallory proceeded to trial. The jury convicted Defendant on all charges against them.

Patton, Green, and Mallory each move for judgments of acquittal under Federal Rule of Criminal Procedure 29(c), and alternatively, new trials under Rule 33. The Government resists each Defendant's motion. For the reasons stated below, the Court denies Defendants' motions.

## II.  BACKGROUND

In 2020, several shootings occurred in Des Moines related to gang violence between rival gangs, "Only the Brothers" and "C-Block." Two shootings occurred on May 10, 2020. The first shooting occurred in the early evening near 31st and Clark Streets. The second shooting occurred later in the evening near East 17th Court and University Avenue. On December 16, 2020, another shooting occurred.

A grand jury in the Southern District of Iowa indicted Defendants on charges related to these shootings. Redacted Indictment, ECF No. 2. The grand jury indicted Patton on three counts: attempted murder of R.N. and A.D. on or about May 10, 2020, in aid of racketeering, or aiding and abetting the same, in violation of the Violent Crimes in Aid of Racketeering Statute (VICAR), 18 U.S.C. §§ 1959(a)(5) and 2 (Count 4); use, carry, or discharge of a firearm during and in relation to a crime of violence for events occurring on or about May 10, 2020, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count 5); and possession of a firearm by a felon, namely: a loaded Smith and Wesson, model 4053 TSW, .40 caliber pistol, with serial number MSE8831, in violation of 18 U.S.C. §§ 922(g)(1) and 924(g)(a)(2) (Count 6). *Id.* at 9–10.

The grand jury indicted Green on seven counts: attempted murder of F.A. on or about May 10, 2020, in aid of racketeering, or aiding and abetting the same, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count 8); use, carry, or discharge of a firearm during and in relation to a crime of violence for events occurring on or about May 10, 2020, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count 9); possession of ammunition by a felon on or about May 10, 2020, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 10); attempted murder of D.C. and Y.F. on or about December 16, 2020, in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count 12); use, carry, or discharge of a firearm during and in relation to a crime of violence for events occurring on or about December 16, 2020, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count 13); possession of firearms by a felon on or about December 16 to 20, 2020, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 14); and tampering with a witness on or about January 21, 2021, in violation of 18 U.S.C. § 1512(b)(1) and (b)(2) (Count 15). *Id.* at 12–17.

The grand jury indicted Mallory with two counts: attempted murder of R.N. and A.D. on or about May 10, 2020, in aid of racketeering, or aiding and abetting the same, in violation of

18 U.S.C. §§ 1959(a)(5) and 2 (Count 4) and use, carry, and discharge of a firearm during and in relation to a crime of violence for events occurring on or about May 10, 2020, or aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count 5). *Id.* at 9–10.

Patton pleaded guilty to the charge of possession of a firearm by a felon. Order Accepting R&R Concerning Def. Patton's Guilty Plea, ECF No. 280. Then, on April 4, 2022, trial commenced on the remaining charges against Patton, Green, and Mallory. Jury Trial Day 1 Mins., ECF No. 328. Attorney Keith Rigg represented Patton. *Id.* Attorney Julie Frank represented Green. *Id.* Attorneys Nick Klinefeldt and David Yoshimura represented Mallory. *Id.* Assistant United States Attorneys Kristin Herrera, Ryan Leemkuil, and Alexa Perez represented the Government. *Id.*

For purposes of a motion for judgment of acquittal, the Court "view[s] the evidence in the light most favorable to the guilty verdict." *United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997).

Testimony and evidence at trial revealed that tensions between the rival gangs Heavy Hittas and C-Block had been rising since the January 2020 murder of a prominent C-Block member. On May 6, 2020, a shooting occurred between associates of Only the Brothers—a subset of the Heavy Hittas—and C-Block.

In the early evening of May 10, 2020, Braden Shafer, Gerante Rankin, Tayronce Denton, Mallory, and Patton were at the Merle Hay Mall. They observed R.N., a known C-Block member, and his girlfriend A.D. arrive at the mall. Testimony indicated Shafer, Rankin, Patton, and Denton were known associates of Only the Brothers. Shafer and Patton were armed. After seeing R.N., Shafer directed Mallory—who was driving his white Trailblazer—to follow R.N. and A.D., who were departing from the mall in a green Sonata. Shortly thereafter near 31st and Clark Streets gun shots erupted. Patton and Shafer shot from the back seat of the Trailblazer, while an unidentified

shooter shot back. Two bullets hit the Sonata. Some bullets hit the Trailblazer. Shafer was shot in the head. Mallory continued driving the Trailblazer until a tire blew out and law enforcement officers conducted a felony traffic stop and arrested Mallory, Patton, Green, Denton, and Rankin.

Later in the evening on May 10, 2020, a second shooting occurred near East 17th Court and University Avenue. Testimony indicated Green and two known associates of Only the Brothers—Fabrece Bower Turner and Anthony Brown—met to retaliate for the earlier shooting of Shafer. On December 16, 2020, another shooting occurred in Des Moines involving Green.

At trial, the Government presented witness testimony and evidence. *See* Trial Witness List, ECF No. 383; Jury Trial Ex. List, ECF No. 374. Bureau of Alcohol, Tobacco, Firearms, and Explosives Special Agent Aaron Chaffee testified about national and neighborhood gangs, generally. ECF No. 383 at 1. Des Moines Police Officer John Curtis testified about the neighborhood gangs operating in Des Moines—including the Heavy Hittas, Only the Brothers, and C-Block. *See id* at 3. Des Moines Police Detective Jeffrey George, Officer Curtis, and Detective Brian Minnehan testified about the Des Moines Police Department's investigations into these gangs. *See id.* at 1, 3, 6. Detective George, Des Moines Police Lieutenant Larry Davey, Officer Brady Pratt, Officer Curtis, and Crime Scene Investigators Krystal Warren, Alisha Rankin, Alyssa Powell, and Gregory Warren testified about their responses to the shootings and investigations of the scenes. *See id.*

Shannon Pope, a witness to the May 6, 2020 shooting, testified about the events on that day. Witnesses to the May 10, 2020 shootings—Troy Green, Stephanie Vonahnen, A.D., Jordan Wilkerson, and Tayronce Denton—testified about their observations. Turner testified about the identity of other affiliates of Only the Brothers, the group's culture, norms, and purpose, including to obtain money through the sale of guns and drugs and retaliating against rival gang members for shooting at, disrespecting, or killing Only the Brothers or Heavy Hittas associates. Brown testified

about Only the Brothers's retaliation tactics, its use of weapons, and the expectation to "put in work" by shooting opposition gang members or "opps." Brown and Turner also testified about the second May 10, 2020 shooting. Witness Jeremiah McGregor testified about the December 16, 2020 shooting, indicating Green told McGregor that he committed the shooting because C-Block members were disrespecting Green's fellow gang member who had died earlier in 2020.

The Government's evidence included guns, spent bullet casings, and lead bullet fragments from multiple weapons recovered from the scenes of each shooting. *See, e.g.*, Gov't's Trial Exs. 1–15, 17–19, ECF Nos. 389-1 to 389-16, 389-18 to 389-20. The Government also presented photographs of the scenes, including images of the locations where law enforcement officers discovered bullet casings, bullet remnants, and bullet holes after the shootings as well as pictures of the bullet holes in various cars involved in the shootings and blood stains on one car's windows. *See* Gov't's Trial Exs. 100–58, 161–70, 175–86, 188–93, 201–08, 215–73, 278–301, 304–05, 309, 311–12, 319–53, ECF Nos. 389-22 to 389-80, 389-83 to 389-83 to 389-92, 389-98 to 389-106, 389-108 to 389-113, 389-116 to 389-120, 390-1 to 390-131. In addition, the Government introduced police interviews recorded with Patton and Mallory after the first May 10, 2020 shooting, *see* Gov't's Trial Exs. 413A–413W, 414A–414L, ECF Nos. 391-42 to 391-76, and law enforcement officers' body camera and dash camera footage from the scenes of the shootings, *see* Gov't's Trial Exs. 402–04, 408, ECF Nos. 391-29 to 391-33, 391-37. The Government introduced social media evidence, including Facebook messages, Snapchat videos, and Snapchat photographs from accounts linked to affiliates of Only the Brothers and accounts linked to Shafer, Patton, and Green. *See* Gov't's Trial Exs. 399, 511–11A, 521–28, 600–23, 630–90, ECF Nos. 391-24, 391-101 to 391-102, 391-111 to 391-125, 393-1 to 393-24, 393-31 to 393-91. These accounts presented videos and photographs depicting Green, Turner, and Shafer displaying gang signs associated with Only the Brothers; videos and photographs of Patton, Green, and Shafer

individually displaying gang signs; images of Patton and Shafer "smoking on" C-Block members (images of these individuals smoking marijuana blunts with images of dead C-Block members superimposed); videos and photographs containing guns and drugs; images of drugs offered with a sale price; Facebook messages between Shafer and Mallory regarding the sale of drugs; and messages between Patton and others regarding the sale of guns and drugs. *See, e.g.*, ECF Nos. 391-108 to 391-110, 391-112 to 391-123, 391-125, 393-1 to 393-10, 393-15, 393-19, 393-31, 393-33 to 393-37, 393-40 to 393-41, 393-44, 393-46 to 393-47, 393-49 to 393-50, 393-53 to 393-54, 393-62, 393-64 to 393-68, 393-83 to 393-84.

At the close of the Government's case in chief, Patton, Green, and Mallory each moved for judgments of acquittal. *See* Jury Trial Day 6 Mins., ECF No. 346; Def. Patton's Oral Mot. J. Acquittal, ECF No. 348; Def. Mallory's Oral Mot. J. Acquittal, ECF No. 350; Def. Green's Oral Mot. J. Acquittal, ECF No. 352. The Government resisted each oral motion. ECF No. 346. The Court denied each motion. Text Order Den. Def. Patton's Oral Mot. J. Acquittal, ECF No. 349; Text Order Den. Def. Mallory's Oral Mot. J. Acquittal, ECF No. 351; Text Order Den. Def. Green's Oral Mot. J. Acquittal, ECF No. 353; *see* ECF No. 346.

Patton then presented his case in chief. *See* ECF No. 346. At the close of Patton's case, he renewed his motion for judgment of acquittal. *See* ECF No. 346. The Court denied Patton's renewed motion. *Id.* Mallory then presented his case in chief. *Id.* At the close of his case, Mallory renewed his motion for judgment of acquittal, and the Court denied it. Jury Trial Day 7 Mins., ECF No. 357. Finally, Green presented his case in chief. *Id.* At the close of his case, Green renewed his motion for judgment of acquittal, and the Court denied it. *Id.*

Regarding the final jury instructions, the Court denied Patton's request to include a justification instruction. *See generally* Final Jury Instructions, ECF No. 372. The Court determined the Iowa Supreme Court's decision in *State v. Baltazar* precluded a justification instruction

6

because Patton was engaged in illegal activity during the May 10, 2020 shooting. *See* 935 N.W.2d 862, 869–72 (Iowa 2019).

The Court included instructions for the crime of attempted murder in aid of racketeering. *See* ECF No. 372 at 22–23. This crime has five elements, and the Court included an instruction on each element. *See* 18 U.S.C. § 1959; ECF No. 372 at 22–33. Final Jury Instruction Number 18 instructed the jury on the first element:

> The first element that the Government must prove beyond a reasonable doubt as to [attempted murder in aid of racketeering] is the existence of an enterprise. The Indictment alleges Only the Brothers, or OTB, including its leadership, its membership, and its associates constituted an "enterprise."
>
> An enterprise includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> The term "enterprise," as used in these instructions, may include a group of people associated in fact, even though this association is not recognized as a legal entity. A group or association of people can be an enterprise if these individuals have joined together for the purpose of engaging in a common course of conduct. This group of people, in addition to having a common purpose, must have personnel who function as a continuing unit. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. Such an association of individuals may retain its status as an enterprise even though the membership of the association changes by adding or losing individuals during the course of its existence.
>
> It is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its members functioned and operated in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group engages in spurts of activity punctuated by periods of inactivity. The Government does not need to prove each and every allegation in the Indictment about the enterprise or the manner in which the enterprise operated.

*Id.* at 24–25.

The jury found all Defendants guilty on all counts.

Now before the Court are Defendants' motions for judgment of acquittal and new trial. Def. Patton's Combined Mot. J. Acquittal & Mot. New Trial, ECF No. 399; Def. Green's Combined Mot. New Trial & Mot. J. Acquittal, ECF No. 400; Def. Mallory's Mot. J. Acquittal or New Trial, ECF No. 401. The Government resists each Defendant's motion. Gov't Resist. Def. Patton's Combined Mot. New Trial & J. Acquittal, ECF No. 411; Gov't Resist. Def. Green's Combined Mot. New Trial & J. Acquittal, ECF No. 413; Gov't Resist. Def. Mallory's Mot. J. Acquittal or New Trial, ECF No. 412. Finding the parties' briefing adequately presents the issues, the Court decides the motions without oral argument. *See United States v. Losing*, 539 F.2d 1174, 1177 (8th Cir. 1976). For the reasons set forth below, the Court denies each Defendant's motion for judgment of acquittal and new trial.

Additional factual findings are set forth below as necessary.

## III.   LEGAL STANDARD

### A.   Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29(c), a defendant "may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict." The Court must enter a judgment of acquittal if the evidence presented at trial "is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In evaluating the sufficiency of the evidence to sustain a defendant's conviction, the Court "view[s] the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." *Basile*, 109 F.3d at 1310. The Court does not assess the credibility of witnesses or weigh the evidence, as this task belongs to the jury. *See United States v. Ireland*, 62 F.3d 227, 230 (8th Cir. 1995). "[T]he jury's verdict is not to be lightly overturned." *United States v. Rodriguez-Ramos*, 663 F.3d 356, 361 (8th Cir. 2011) (internal quotation marks and citation omitted). The Court "can overturn the jury's verdict only if a reasonable fact-finder must have entertained a reasonable

doubt about the government's proof of one of the offense's essential elements." *United States v. Kinshaw*, 71 F.3d 268, 271 (8th Cir. 1995) (internal quotation marks and citation omitted).

### B.    New Trial

The Court has broad discretion to consider a defendant's motion for new trial. *See United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004). Under Federal Rule of Criminal Procedure 33(a), a court may grant a defendant's request for a new trial "if the interest of justice so requires." The Court must exercise its authority to grant a new trial "sparingly and with caution." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (internal quotation marks and citation omitted).

## IV.    DISCUSSION

The Court addresses each Defendant's motion in turn.

### A.    Defendant Patton

#### 1.    Motion for judgment of acquittal

Patton argues he is entitled to judgment of acquittal because insufficient evidence supports his conviction for attempted murder of R.N. in aid of racketeering. *See* ECF No. 399 ¶¶ 3–6. He contends no interpretation of the evidence permits his conviction. Def. Patton's Br. Supp. Mot. J. Acquittal & New Trial 5–7, ECF No. 399-1. Patton argues an unidentified individual shot at the car he was in. *See id.* He argues, while evidence may indicate he shot at that shooter, insufficient evidence demonstrates he intended to shoot at R.N. *Id.* Because insufficient evidence supported the guilty verdict for attempted murder in aid of racketeering, Patton contends he also cannot be found guilty of use, carry, and discharge of a firearm during and in relation to a crime of violence. *Id.* at 5. The Government resists, arguing substantial evidence supports the jury's verdict. ECF No. 411 at 5–6. The Government contends evidence indicating the shooter was unidentified is insufficient to warrant judgment of acquittal. *Id.* at 5–6.

A court will not grant a motion for judgment of acquittal "if any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *United States v. Worthey*, 716 F.3d 1107, 1113 (8th Cir. 2013). The standard "is very strict, and the jury's verdict is not to be lightly overturned." *United States v. Wright*, 993 F.3d 1054, 1065 (8th Cir. 2021).

Here the evidence, viewed in the light most favorable to the Government, provides ample support for the jury's guilty verdicts as to attempted murder in aid of racketeering and use, carry, or discharge of a firearm during and in relation to that crime. The crime of attempted murder in aid of racketeering five has elements: 1) an enterprise existed; 2) the enterprise engaged in, or its activities affected, interstate commerce; 3) the enterprise engaged in racketeering activity; 4) the defendant attempted to murder a person, and 5) the defendant committed the underlying crime of violence (here, attempted murder) for the purpose of maintaining or increasing his position in the enterprise.[1] 18 U.S.C. § 1959. The crime of use, carry, or discharge of a firearm in furtherance of a crime of violence has two elements: 1) the defendant committed the underlying crime of violence (here, attempted murder); and 2) the defendant knowingly used, carried, or discharged a firearm during and in relation to that crime. 18 U.S.C. § 924(c)(1)(A)(iii).

As to attempted murder in aid of racketeering, the Government presented sufficient evidence at trial for a rational trier of fact to find the essential elements beyond a reasonable doubt. Law enforcement officers' and lay witnesses' testimony and evidence from social media demonstrated an enterprise—Only the Brothers—existed, that it engaged in activities affecting interstate commerce, and that it engaged in racketeering. Detective Curtis's testimony regarding the structure, operations, and culture of neighborhood gangs added insight to Officer George's testimony about Only the Brothers's structure, operations, and activities. Turner's and Brown's

---

[1] VICAR utilizes the definition of "racketeering" as stated in the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961. *See* 18 U.S.C. § 1959(b)(1). VICAR and RICO contain identical definitions of an association-in-fact "enterprise." *Compare* 18 U.S.C. § 1959(b)(2), *with* 18 U.S.C. § 9181(4).

testimony about their association and activities with Only the Brothers, including selling guns and drugs to acquire money for the group and participating in retaliatory shootings, corroborated this information. Further, Pope's testimony regarding his knowledge about the conduct of individuals known to be affiliated with Only the Brothers, including Patton's role in shootings, selling drugs, and selling guns to obtain money for the group, corroborated law enforcement officers' testimony. Law enforcement officers' testimony about the movement of the guns at issue over state lines tied the guns at issue and Only the Brothers to interstate activities. Evidence and testimony regarding Only the Brothers's activities of selling drugs and guns was sufficient for a reasonable trier of fact to find it engaged in activities affecting interstate commerce and engaged in racketeering activities. *See* 18 U.S.C. § 1961. Sufficient evidence at trial established the first three elements of attempted murder in aid of racketeering beyond a reasonable doubt.

The Government also presented sufficient evidence demonstrating Patton attempted to murder R.N. *Cf. Worthey*, 716 F.3d at 1113. Testimony from Denton, a passenger in the Trailblazer, and A.D., a passenger in the Sonata with R.N., indicated the Trailblazer was following the Sonata because Shafer—a known associate of Only the Brothers—saw R.N.—a known C-Block affiliate. These two individuals had a recent history of tension based on their social media activity. This testimony tied the gun shots from the back of the Trailblazer to R.N., specifically. Further, the bullet holes in the Sonata's front passenger window and tire support an inference that someone in the car was the target of the gun shots. Eyewitnesses not involved in the altercation indicated the shooter was in the back driver's-side seat. Denton's testimony, law enforcement officers' dash camera footage, and Patton's interview with law enforcement officers demonstrated Patton was in that seat. Patton's interview also indicated he had fired a gun. From this evidence, a rational trier of fact could conclude Patton was the shooter and attempted to fire on R.N., satisfying the fourth element of attempted murder in aid of racketeering.

The Government presented sufficient evidence demonstrating Patton attempted to murder R.N. for the purpose of maintaining or increasing Patton's position in Only the Brothers. *Cf. Worthey*, 716 F.3d at 1113. Detective George's testimony about the Des Moines Police Department's investigation into Only the Brothers and C-Block during 2020 indicated Patton was affiliated with Only the Brothers. Pope's, Brown's, and Turner's testimony, Facebook messages, and social media photographs from accounts connected to affiliates of Only the Brothers corroborated Patton's ties with Only the Brothers. Photographs and videos depicted Patton with known Only the Brothers associates and images showed him reference Only the Brothers with emojis and by disrespectfully displaying the C-Block symbol. *See, e.g.*, Gov't's Trial Exs. 600, 618, ECF Nos. 393-1, 393-19. Testimony indicated R.N. was affiliated with C-Block, the rival to Only the Brothers. Law enforcement officers, Denton, and Pope testified that tensions were high between the Heavy Hittas (and its subsets, including Only the Brothers) and C-Block (and its subsets) starting in January 2020 and leading up to a shooting on May 6, 2020. This evidence tied Patton's actions in shooting at R.N. to Patton's position in Only the Brothers. His actions were in-line with the expectations of associates of Only the Brothers—as Brown's and Turner's testimony about Only the Brothers's culture of retaliation and expectation to shoot rival gang members demonstrated. *Cf. United States v. Whitten*, 610 F.3d 168, 179 (2d Cir. 2010) (finding the Government sufficiently demonstrated the purpose element when evidence indicated members of the organization at issue "were expected . . . to react with violence toward offending outsiders, including any member of the rival . . . gang"). Based on the evidence presented at trial, a rational trier of fact could have found beyond a reasonable doubt that Patton attempted to murder R.N. in aid of racketeering.

As to the use, carry, or discharge of a firearm during and in relation to a crime of violence, the Government presented sufficient evidence at trial for a reasonable juror to find this crime

beyond a reasonable doubt. *Cf. Worthey*, 716 F.3d at 1113. In addition to testimony from witnesses who saw and heard gunshots from the individual hanging out the back driver's-side window—which evidence sufficiently identified beyond a reasonable doubt as Patton—Patton himself stated he fired a gun and Denton threw it out the window. *See* Gov't's Trial Ex. 414-e at 0:08–11, ECF No. 391-69. On February 3, 2022, Patton pleaded guilty to possession of a firearm by a felon. *See* Gov't's Trial Ex. 513, ECF No. 391-104. During his plea colloquy, he testified to knowingly possessing a Smith and Wesson Model 4053 TSW .40-caliber pistol on May 10, 2020, in Des Moines. *Id.* at 18:11–15. The Court admitted this testimony. *See id.* Ballistics information from the scene supports the jury's finding that Patton used or fired the gun he testified to possessing during the commission of the crime of attempted murder. Crime Scene Investigator Rankin collected lead bullet fragments while moving east along Clark Street—the same direction the Trailblazer was driving after the shooting, according to Officer Curtis's and Lieutenant Davey's observations. Rankin also collected several .40-caliber shell casings at the intersection of 30th and Clark Streets. Based on the evidence presented at trial, a rational trier of fact could have found, beyond a reasonable doubt, that Patton used, carried, or discharged a firearm, namely the Smith and Wesson 4053 TSW .40-caliber pistol, during and in relation to the crime of attempted murder in aid of racketeering. *See Worthey*, 716 F.3d at 1113.

Looking at the evidence and testimony in the light most favorable to the guilty verdicts and drawing all reasonable inferences the evidence permits in the Government's favor, the Court finds the Government presented more than sufficient evidence for rational triers of fact to find Patton guilty of the crimes of attempted murder of R.N. in aid of racketeering, and use, carry, or discharge of a firearm during and in relation to the crime of attempted murder. *Cf. Basile*, 109 F.3d at 1310. Based on this record Patton cannot demonstrate a reasonable fact-finder must have entertained a reasonable doubt about the Government's proof of one of the offense's essential elements. *See*

*Kinshaw*, 71 F.3d at 271. As such, Patton is not entitled to judgment of acquittal.

The Court denies Patton's motion for judgment of acquittal.

## 2.    Motion for new trial

Patton argues he is entitled to a new trial because the convictions for attempted murder in aid of racketeering and use, carry, or discharge of a firearm during and in relation to a crime of violence are contrary to the weight of the evidence. ECF No. 399-1 at 7–8. Patton contends the presence of an independent shooter firing at him demonstrates he was shooting back. *Id.* He argues the interest of justice requires a new trial. *Id.* at 8. Additionally, Patton argues the Court erred in applying *State v. Baltazar* to support its omission of a justification instruction. *Id.* at 8–13 (citing *Baltazar*, 935 N.W.2d 862). The Government resists, arguing sufficient evidence supports Patton's convictions. ECF No. 411 at 4–6. The Government also argues Patton failed to put forth substantial evidence to support the justification instruction. *Id.* at 6–8. Further, the Government argues Patton was disqualified from raising a justification defense because the "unrebutted record" demonstrated he was engaged in illegal activity at the time of the shooting. *Id.* at 8–1.

### a.    Sufficiency of the evidence

"A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020) (internal quotation marks and citation omitted). "[T]here is no requirement that the government produce direct evidence of a defendant's guilt." *United States v. Worman*, 622 F.3d 969, 977 (8th Cir. 2010). When considering a motion for new trial based on sufficiency of the evidence the Court "need not view the evidence most favorably to the verdict, but must weigh the evidence and evaluate the credibility of the witnesses." *Id.*

A miscarriage of justice did not occur. *Cf. Dowty*, 964 F.3d at 708. Here, the evidence did not weigh heavily enough against the verdict for attempted murder in aid of racketeering. *Cf. id.*

Overwhelming evidence, as described above, supports the jury's verdict. *See supra* Part IV.A.1. Law enforcement officers' testimony, eyewitness testimony, testimony from individuals known to be affiliated with Only the Brothers, and ample evidence, including photographs, videos, and messages from social media, law enforcement officers' dash camera footage, and Patton's own statements, demonstrated beyond a reasonable doubt that Patton shot at R.N. due to his position as a rival gang member in order to further or maintain Patton's position in Only the Brothers. *Cf. Whitten*, 610 F.3d at 179; *United States v. Woods*, 14 F.4th 544, 556–57 (6th Cir. 2021) (finding sufficient to satisfy the purpose element certain testimony that "it was important to [the gang at issue] to protect its reputation and [that] members would engage in retribution in response to any perceived disrespect" in conjunction with social media posts from a rival gang mocking the defendants' gang).

 Additionally, testimony from known associates of Only the Brothers and social media evidence demonstrated beyond a reasonable doubt that Only the Brothers engaged in racketeering activity, including selling drugs, in order to obtain money for the group. Testimony from law enforcement officers demonstrating guns obtained and sold by Only the Brothers crossed state lines sufficiently shows Only the Brothers's activities affected interstate commerce.

Overwhelming evidence also supports the jury's verdict for use, carry, or discharge of a firearm during and in relation to a crime of violence. *Cf. Dowty*, 964 F.3d at 708; *see supra* Part IV.A.1. Ballistics evidence, civilian testimony, and Patton's statements were sufficient to support the jury's verdict that he used, discharged, or carried a firearm during the commission of the attempted murder. This evidence does not weigh heavily enough against the guilty verdict to demonstrate a miscarriage of justice may have occurred. *Cf. Dowty*, 964 F.3d at 708.

The unknown identity of an alleged shooter does nothing to undermine the evidence the Government presented at trial. A.D.'s testimony indicated R.N. did not have a gun and Denton's

testimony indicated he believed the Trailblazer was led to a set up. Additionally, testimony at trial indicated a third unidentified shooter may have been involved. The jury was aware of the possible presence of an unknown shooter. With this information and all the evidence presented at trial, the jury performed its role to weigh the evidence and determine the credibility of witnesses. *See Ireland*, 62 F.3d at 230. The record—including the presence of an unidentified third shooter—does not undermine the overwhelming evidence and testimony supporting the verdict such that a miscarriage of justice may have occurred. *Cf. Dowty*, 964 F.3d at 708. As such, Patton is not entitled to a new trial based on sufficiency of the evidence.

b.      Jury instruction

Jury instructions are not erroneous if "taken as a whole, they fairly and adequately instruct the jurors on the applicable law." *United States v. Kent*, 531 F.3d 642, 653 (8th Cir. 2008). The Court "will not reverse a judgment based on an alleged error in instructing a jury unless that error was prejudicial." *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1124 (8th Cir. 1998). "[A] new trial is necessary only when the erro[neous instruction] misled the jury or had a probable effect on the jury's verdict." *Slidell, Inc. v. Millennium Inorganic Chems.*, 460 F.3d 1047, 1054 (8th Cir. 2006).

Iowa Code § 704.3 codifies the justification defense, providing: "[a] person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from actual or imminent use of unlawful force." Iowa Code § 704.3. "Justification is a statutory defense that permits a defendant to use reasonable force to defend himself or herself." *Baltazar*, 935 N.W.2d at 869. "Substantial evidence of self-defense from any source justifies submission of a self-defense instruction." *State v. Rains*, 574 N.W.2d 904, 915 (Iowa 1998). "If substantial evidence exists, the district court has a duty to give the requested instruction." *Id.* The defense of justification is not available to "[o]ne who is participating in a forcible felony." Iowa Code § 704.6(1).

Under Iowa Code § 704.1(1),

Reasonable force means that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.

Additionally, "[a] person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force as specified in this chapter." *Id.* § 704.1(3).

In *Baltazar*, the Iowa Supreme Court determined the defendant was not entitled to a justification defense when he was engaged in illegal activity, "in a way that [was] germane to the use of force." *Baltazar*, 935 N.W.2d at 871. The defendant had illegally possessed a handgun, and the handgun, which the defendant later fired, caused the victim's death. *Id.* at 871. From this, the court determined the defendant's "possession of the handgun was germane to the use of deadly force." *Id.* The court also read § 704.1(3) to imply its converse—that "the duty to retreat remains if the activity is illegal or the presence unlawful." *Id.* at 870. Under this rule, the court concluded the defendant "was not entitled to an instruction regarding § 704.1(3)'s stand-your-ground justification" because his "illegal activity . . . disqualified him from asserting his justification" for shooting the victim. *Id.* at 871.

Following this precedent, this Court did not erroneously omit a justification instruction. The Final Jury Instructions accurately instructed the jurors on the law, applying Iowa law and prohibiting a justification defense for Patton on the facts of the case. *Cf. Baltazar*, 935 N.W.2d at 870. On February 3, 2022, Patton pleaded guilty to possession of a firearm by a felon when he possessed a Smith and Wesson .40-caliber pistol on May 10, 2020. *See* Gov't's Trial Ex. 513, ECF No. 391-104. Due to his status as a felon on May 10, 2020, Patton was prohibited from possessing a gun, including the gun he pleaded guilty to possessing. 18 U.S.C. § 922(d)(1). As

such, Patton engaged in illegal activity when he possessed the gun he used to shoot at R.N. *See* ECF No. 391-104. The evidence demonstrates Patton's possession of the firearm was germane to the use of force—evidence and testimony connected bullets and spent casings from the Smith and Wesson Patton possessed to the shooting of R.N.'s car on May 10, 2020. *Cf. Baltazar*, 935 N.W.2d at 870. Patton used the gun he illegally possessed to fire bullets, the very conduct he attempts to justify. Pursuant to *Baltazar* and Iowa Code § 704.1(3), Patton was not entitled to a justification defense because he was engaged in illegal activity when he exerted the alleged justified force. *Cf.* 935 N.W.2d at 870. As such, the Court did not err when it excluded a justification jury instruction. *Cf. Slidell*, 460 F.3d at 1054.

Additionally, Patton was not entitled to a justification defense pursuant to Iowa Code § 704.6(1). On May 10, 2020, during the course of events at issue, Patton participated in a forcible felony. The Government presented evidence of Patton's court records from the District Court of Polk County, Iowa. Gov't's Trial Ex. 512, ECF No. 391-103. These records indicated that on November 18, 2020, Patton pleaded guilty to conspiracy to commit a forcible felony. *Id.* at 5. The guilty plea related to his actions on May 10, 2020, and he admitted he "conspire[d] . . . to commit a forcible felony by planning with others to engage in a shooting." *Id.* at 6. This evidence demonstrates Patton was engaged in a forcible felony during the events at issue. As such, Patton was not entitled to a justification defense instruction under Iowa law. *See* Iowa Code § 704.6(1). The Court did not err in omitting a justification instruction because a justification defense was unavailable to Patton. *See id.*

Even if Patton's illegal activity and commission of a forcible felony do not bar a justification defense, Patton failed to put forth substantial evidence of self-defense to justify the submission of justification instruction. *Cf. Rains*, 574 N.W.2d at 915. Patton points to no evidence, other than the presence of an unidentified shooter, as justification for his use of force. The

possibility of an alleged unknown shooter is not substantial evidence of self-defense. The evidence has limited weight because multiple eyewitnesses observed and heard gunshots just after viewing the Trailblazer following R.N., with Patton hanging out the back driver's-side window. Further, the bullet casings found at the scene tied Patton's gun to R.N.'s Sonata.

The Court did not err in omitting Patton's requested justification instruction. Patton is not entitled to a new trial based on the final jury instructions.

The Court denies Patton's motion for new trial.

## B.    Defendant Green

### 1.    Motion for judgment of acquittal

Green argues he is entitled to judgment of acquittal because there was insufficient evidence of an enterprise to support his convictions for attempted murder in aid of racketeering. *See* ECF No. 400 ¶ 4. He argues insufficient evidence demonstrates his connection to Only the Brothers or that he wished to maintain or increase his position in Only the Brothers. Def. Green's Br. Supp. Mot. J. Acquittal & New Trial 5, ECF No. 400-1. He also contends the Government failed to proffer evidence identifying members of the enterprise because the Government's evidence suggested that "everyone, regardless of their relationship to Only the Brothers" was part of the enterprise. *Id.* The Government resists, arguing substantial evidence supports Green's convictions for attempted murder in aid of racketeering. ECF No. 413 at 8–11.

Here the evidence, viewed in the light most favorable to the guilty verdict, provides more than sufficient support for the existence of an enterprise. *Cf. Worthey*, 716 F.3d at 1113. As discussed above, Special Agent Chafee testified about the operations, structure, and development of national and neighborhood gangs based on his extensive training and experience. Detective Curtis's testimony regarding neighborhood gangs operating in Des Moines, including Only the Brothers, demonstrated these groups operated in a similar manner to Agent Chafee's explanation.

Detective Curtis's testimony along with Turner's and Brown's testimony indicated Only the Brothers formed in 2019 as a subset of the Heavy Hittas gang and was comprised of a group of individuals who grew up together or knew each other from their neighborhood. Turner's and Brown's testimony also indicated members carried guns, engaged in the sale of drugs and guns to obtain money for the group, "put in work" by shooting members of the rival C-Block gang, and engaged in retaliatory behavior, including shootings when Only the Brothers associates were disrespected, hurt, or killed by C-Block members. This evidence was more than sufficient to establish the existence of an enterprise that engaged in racketeering activity and affected interstate commerce.

Similarly, testimony and evidence viewed in the light most favorable to the guilty verdict demonstrates Green was affiliated with Only the Brothers and his actions were taken for the purpose of increasing or maintaining his position within the group. *Cf. Worthey*, 716 F.3d at 1113. Turner's and Brown's testimony indicated Green was affiliated with Only the Brothers. Social media evidence corroborated their testimony. Snapchat photographs and videos depicted Green with known associates of Only the Brothers and depicted Green displaying gang symbols affiliated with Only the Brothers and other symbols disrespecting the rival C-Block gang. *See, e.g.*, ECF Nos. 393-37, 393-40, 393-83 to 393-84. Turner's testimony regarding his and Green's retaliatory shooting on May 10, 2020, comports with Agent Chafee's and Detective Curtis's testimony regarding the culture, retaliatory methods, and retaliatory expectations within neighborhood gangs, generally, and within Only the Brothers specifically. *Cf. Whitten*, 610 F.3d at 179; *Woods*, 14 F.4th at 556–57. This testimony supports the inference that Green acted in retaliation against rival C-Block members for a perceived wrong to his fellow Only the Brothers associate, Shafer. *Cf. Whitten*, 610 F.3d at 179 (finding testimony connecting violence by members of the organization at issue with one's status within the organization was sufficient to demonstrate the

defendant murdered the victims to improve his position within the organization). From this evidence, a jury could conclude beyond a reasonable doubt that Green was affiliated with Only the Brothers and his actions were taken for the purpose of increasing or maintaining his position within the group. *Cf. id.*

Based on the extensive evidence and testimony presented at trial, a rational fact-finder could have found the existence of Only the Brothers, Green's affiliation with it, and the purpose of Green's acts, each beyond a reasonable doubt. *Cf. Worthey*, 716 F.3d at 1113. Because a rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt, Green is not entitled to a judgment of acquittal based on sufficiency of the evidence. *Cf. Kinshaw*, 71 F.3d at 271.

The Court denies Green's motion for judgment of acquittal.

### 2.      Motion for new trial

Green argues he is entitled to a new trial because the Government failed to prove beyond a reasonable doubt the "identity and composition of the enterprise" and the "common purpose of the enterprise" to support his convictions for attempted murder in aid of racketeering. ECF No. 400-1 at 7. He also argues he is entitled to a new trial because the Court did not instruct the jury that the enterprise must comprise a structure distinct from that inherent in the racketeering activity alleged. *Id.* at 3 (citing *United States v. Darden*, 70 F.3d 1507, 1520 (8th Cir. 1995)). The Government resists, arguing sufficient evidence supports Green's convictions for attempted murder in aid of racketeering. ECF No. 413 at 8–14. The Government also argues the Court properly instructed the jury on the meaning of "enterprise." *Id.* at 4–8.

#### a.      Sufficiency of the evidence

Overwhelming evidence at trial demonstrated the identity and composition of Only the Brothers. *See supra* Part IV.A.2.a. Law enforcement officers' testimony as to their investigation

of Only the Brothers, testimony from Only the Brothers associates, and evidence from social media demonstrated specific individuals were associates of Only the Brothers. Social media photographs and videos showed Brown, Turner, Shafer, and Green engaged in activity associated with Only the Brothers, including displaying gang symbols, utilizing social media emojis tied to Only the Brothers, displaying guns, disrespecting C-Block members by depicting themselves "smoking on" C-Block members, and referencing C-Block and its members as "opps."

Similarly, overwhelming evidence at trial demonstrated the common purpose of Only the Brothers. *See supra* Part IV.A.2.a. Turner's and Brown's testimony indicated the group's purpose was to obtain money through the sale of drugs and guns, gain respect, and retaliate against rival gang members who disrespected Only the Brothers associates. Their testimony indicated individuals could obtain respect and further their reputation within Only the Brothers by "putting in work," i.e., conducting shootings. Law enforcement officers' testimony regarding the various shootings throughout 2020 and the rising tensions between Only the Brothers and C-Block comport with evidence demonstrating Only the Brothers's purpose was, in part, for members to obtain respect and target rival gang members. *Cf. Woods*, 14 F.4th at 556–57.

On this record, more than substantial evidence supports the jury's determination as to the identity and composition of the enterprise, Only the Brothers, and its common purpose. Contrary evidence does not weigh so heavily against the identity and composition of Only the Brothers as to demonstrate a miscarriage of justice may have occurred. *Cf. Dowty*, 964 F.3d at 708. As such, Green is not entitled to a new trial based on sufficiency of the evidence.

b.    Jury instruction

The Court did not err when it defined "enterprise" in Final Jury Instruction Number 18 as an element of attempted murder in aid of racketeering. *See* ECF No. 372 at 24–25. The Court accurately instructed the jury on the applicable law. Title 18 United States Code § 1959 defines

"enterprise" to "include[ ] any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2). Final Instruction Number 18 defined "enterprise" using this language. *See* ECF No. 372 at 24.

Green's argument that the instruction erroneously omitted the requirement that an enterprise have a structure distinct from that inherent in the racketeering activity alleged is unavailing. *See* ECF No. 400-1 at 3. In *United States v. Boyle*, the United States Supreme Court addressed the meaning of "enterprise" under the Racketeer Influenced and Corrupt Organizations Act. 556 U.S. 938, 940–43 (2009) (discussing 18 U.S.C. § 1961 et seq.). The Supreme Court broadly construed "enterprise" to require "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. The Supreme Court rejected the argument that "an association-in-fact enterprise . . . must have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." *Id.* at 940–41 (internal quotation marks and citation omitted).

Green erroneously relies on *United States v. Darden*, to support his argument. *See* ECF No. 400-1 at 3 (citing *Darden*, 70 F.3d at 1520). In *Darden*, the Eighth Circuit applied the requirement that an enterprise have "an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity." 70 F.3d at 1520. *Boyle* rejected this definition of enterprise. *See* 556 U.S. at 945–47. Because the jury instructions accurately reflected the law as stated in *Boyle*, they were not erroneous. As such, Green is not entitled to a new trial based on Final Jury Instruction Number 18's definition of "enterprise."

The Court denies Green's motion for new trial.

C.      **Defendant Mallory**

1.      **Motion for judgment of acquittal**

Mallory argues he is entitled to judgment of acquittal because insufficient evidence supported his conviction for aiding and abetting attempted murder in aid of racketeering and aiding and abetting the use, carry, or discharge of a firearm in furtherance of a crime of violence. Def. Mallory's Br. Supp. Mot. J. Acquittal or New Trial 4–9, ECF No. 401-1. Mallory argues insufficient evidence demonstrated he was involved in the events leading to the shooting on May 10, 2020, knew about guns in the Trailblazer, knew Patton or Shafer were going to shoot at people, or was himself a member of Only the Brothers. *Id.* at 4–7. He also argues the victim's identity was unclear, precluding his conviction. *Id.* at 7. He contends the evidence does not establish he was driving the car on May 10, 2020, and the Government failed to provide an explanation for exculpatory evidence. *Id.* at 8–9. The Government resists, arguing overwhelming evidence supports Mallory's convictions. ECF No. 412 at 4–9.

Mallory was charged in the instant offense under a theory of aiding and abetting attempted murder in aid of racketeering. *See* 18 U.S.C. § 2; ECF No. 2 at 9–10. The Government had to prove both that Mallory aided and abetted the attempted murder and that the attempted murder was done in aid of racketeering. To demonstrate the aiding and abetting aspect, the Government had to prove three elements: "before or at the time the offense [of attempted murder in aid of racketeering] was committed, [Mallory] knew the offense [of attempted murder in aid of racketeering] was being committed or was going to be committed; [Mallory] knowingly acted to encourage, aid, or cause the offense [of attempted murder in aid of racketeering]; and [Mallory] intended that the offense [of attempted murder in aid of racketeering] be committed." *United States v. Delpit*, 94 F.3d 1134, 1151 (8th Cir. 1996).

Viewing the evidence in the light most favorable to Mallory's convictions and giving

the Government the benefit of all reasonable inferences that may be drawn from the evidence, the Court finds sufficient evidence supports Mallory's convictions. The Government presented sufficient evidence at trial to demonstrate Mallory aided and abetted attempted murder in aid of racketeering. The Government presented evidence indicating Mallory knew about Patton's and Shafer's possession of firearms and that they would shoot at people on May 10, 2020. Namely, Mallory's statements to law enforcement officers during his interview along with the corroborating evidence at trial provided the jury with a reasonable basis to infer Mallory knew what would happen when he followed A.D. and R.N. out of the Merle Hay Mall. For example, during his interview, Mallory indicated he knew Shafer "had a past" and indicated he was not surprised Shafer had a gun. ECF Nos. 391-46, 391-52. Mallory indicated he had seen Shafer with a gun on social media. ECF No. 391-62 at 1:00–1:10. Additionally, Mallory indicated he knew the Trailblazer's passengers had been in trouble before. *See* ECF No. 391-50. He explained he knew something was going to happen but thought it might be a fight; however, once he turned onto Clark Street and the back window went down, he realized the passengers had guns and were going to shoot. *See* ECF No. 391-64 at 1:17–2:47. This evidence coupled with Mallory's Facebook exchanges with Shafer, were sufficient for the jury to infer from the evidence and testimony presented at trial that Mallory was aware of the guns and knew what would happen when he followed the Sonata.

Overwhelming evidence demonstrated Mallory was driving the Trailblazer during the first shooting on May 10, 2020, thereby aiding the commission of attempted murder by providing the vehicle from which Patton shot at R.N. Officer Curtis's dash camera footage from the first May 10, 2020 shooting showed Mallory exit the Trailblazer from the driver's seat after the shooting. *See* Gov't's Trial Ex. 402 at 4:38–5:01. Denton testified that Mallory drove the Trailblazer and followed the Sonata because Shafer instructed him to do so. During his interview with law enforcement officers, Mallory repeatedly explained that he drove the Trailblazer from

Merle Hay Mall on May 10, 2020. *See, e.g.*, ECF No. 391-64 at 1:00–1:17. He indicated he followed the Sonata because someone in the backseat told him to do so. Mallory's statements corroborate Denton's testimony. Defense counsel effectively highlighted home surveillance footage purportedly showing Mallory in a red jacket sitting in the passenger seat of the Trailblazer just prior to the shooting. Defense counsel also drew out testimony from Denton on cross-examination that the home surveillance footage appeared to show someone other than Mallory driving the Trailblazer. The Court's role, however, is not to assess witnesses' credibility or weigh evidence on a motion for judgment of acquittal. *See Ireland*, 62 F.3d at 230. Moreover, the Court does not lightly overturn a jury's verdict. *Cf. Wright*, 993 F.3d 1065. Based on the trial record, including evidence suggesting Mallory may not have been driving, a reasonable fact-finder could have found beyond a reasonable doubt that Mallory was driving the Trailblazer. *Cf. Kinshaw*, 71 F.3d at 272.

The Government presented sufficient evidence to demonstrate the attempted murder was in aid of racketeering. Evidence demonstrated the intended victim of the shooting was R.N. As described throughout this order, overwhelming evidence indicated R.N. was the intended target of Patton's murder attempt. *See supra* Part IV.A.2.a; Part IV.B.2.a. Multiple witnesses testified to Shafer's tension with and dislike of R.N., R.N.'s affiliation with Only the Brothers's rival gang C-Block, and the norms of and expectations for retaliation within Only the Brothers to shoot C-Block's members. Denton testified Shafer instructed Mallory to follow the Sonata because R.N. was in it. Finally, photographic evidence depicting R.N.'s car with bullet holes and A.D.'s testimony about the shooting provides additional support to demonstrate R.N. was the intended victim. Based on this record, a rational trier of fact could have found R.N. was the victim of attempted murder, and the attempted murder was committed in aid of racketeering.

Mallory's argument regarding his affiliation with Only the Brothers is unavailing. The

statute under which Mallory was charged, 18 U.S.C. § 1959, does not require the Government to prove Mallory was a member or affiliate of the enterprise at issue—Only the Brothers. *See* ECF No. 2 at 9. Rather, the Government must prove the existence of an enterprise and that the enterprise engaged in racketeering activity. *See* 19 U.S.C. § 1959(a). The Government had to demonstrate Mallory aided and abetted the commission of attempted murder and that the offense of attempted murder was for the purpose of maintaining or increasing one's position in the enterprise. *See id.* As this order has highlighted, the Government presented overwhelming evidence demonstrating the existence of Only the Brothers and that it engaged in racketeering activity. *See supra* Part IV.A.2.a; Part IV.B.2.a. As to Mallory's role, social media evidence at trial demonstrated Mallory was friends with Shafer, knew other affiliates of Only the Brothers and their nicknames, purchased drugs from Only the Brothers members, at times drove Shafer to drug sales, and was aware of Shafer's criminal past. *See, e.g.*, ECF No. 391-112. From this evidence, a reasonable jury could infer Mallory obeyed Shafer's instruction to follow the Sonata containing R.N. and A.D. in order to aid Shafer, Patton, or other affiliates of Only the Brothers in Mallory's Trailblazer with the commission of attempted murder in furtherance of his friends' interest in maintaining their affiliations or positions within Only the Brothers. On this record, a rational trier of fact could have found the essential elements of the crimes charged against Mallory beyond a reasonable doubt. *Cf. Worthey*, 716 f.3d at 1113.

Based on the testimony and evidence presented at trial, a rational trier could have found Mallory guilty of the charged offense. Mallory's arguments regarding sufficiency of the evidence are unavailing. As such, judgment of acquittal is not warranted.

The Court denies Mallory's motion for judgment of acquittal.

### 2.      Motion for new trial

Mallory relies on the same insufficiency of the evidence arguments to support his motion

for new trial as he made to support his motion for judgment of acquittal. *See* ECF No. 401-1 at 4–9; *see supra* Part IV.C.1. He also joins Patton's motion for new trial based on the Court's omission of a justification instruction. ECF No. 401-1 at 7; *see* ECF No. 399-1 at 8–13. The Government resists, arguing overwhelming evidence supports Mallory's convictions. ECF No. 412 at 4–9. The Government relies on its response to Patton's motion for new trial, arguing the Court did not err regarding the justification instruction. *Id.* at 9–10; *see also* ECF No. 401-1 at 7.

        a.      Evidence

The evidence presented at trial did not weigh heavily enough against the verdict such that a miscarriage of justice may have occurred. Eyewitness testimony, Mallory's own statements, and Facebook messages between Mallory and Shafer provided a basis for the jury to apply the law and using common sense, draw reasonable inferences from the trial evidence—as it was instructed—to find Mallory guilty of the charged crimes. As explained above, the Government presented sufficient evidence from which the jury could find Mallory aided and abetted the attempted murder of R.N., in aid of racketeering and aided and abetted the use, carry, or discharge of a firearm in the commission of a crime. *See supra* Part IV.C.1. The video evidence purportedly showing someone other than Mallory driving the Trailblazer on May 10, 2020, does not undermine the otherwise substantial evidence—which includes video evidence and Mallory's own statements that he was driving the Trailblazer—such that a "miscarriage of justice" occurred. *Cf. Dowty*, 946 F.3d at 708. As such, a new trial based on sufficiency of the evidence is not warranted.

        b.      Jury instruction

For the same reasons as those explained above, the Court did not err in omitting a justification instruction. *See supra* Part IV.A.2.a. Because the final jury instructions accurately reflect the law, they were not erroneous. *Kent*, 531 F.3d at 653; *Boyle*, 556 U.S. at 945–47; *cf. Slidell*, 460 F.3d at 1054. As such, Mallory is not entitled to a new trial based on the omission of

a justification jury instruction.

The Court denies Mallory's motion for a new trial.

## V.    CONCLUSION

For the reasons described above, Defendants are not entitled to judgments of acquittal. Additionally, new trials are not warranted for any Defendant.

Accordingly, **IT IS ORDERED** that Defendant Raekwon Malik Patton's Motion for Judgment of Acquittal and Motion for New Trial, ECF No. 399, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Yuri Perren Green Jr.'s Motion for New Trial and Motion for Judgment of Acquittal, ECF No. 400, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Austin James Mallory's Motion for Judgment of Acquittal or New Trial, ECF No. 401, is **DENIED.**

**IT IS SO ORDERED.**

Dated this 18th day of August, 2022.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE